**1**

```
1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    UNITED STATES OF AMERICA,          )

4                 Plaintiff,            )

5        vs.                            )   No. 90 CR 950 and
                                        )      04 CR 503
6    WILLIE JOHNSON,                    )   Chicago, Illinois
                                        )   December 6, 2006
7                 Defendant.            )   11:07 o'clock a.m.

8                 TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JAMES F. HOLDERMAN

9

10   APPEARANCES:

11   For the Plaintiff:       HON. PATRICK J. FITZGERALD
                              United States Attorney
12                            219 South Dearborn Street
                              Chicago, Illinois  60604
13                            (312) 469-6212
                              BY:  MR. AMARJEET S. BHACHU
14                                 MR. MATTHEW M. SCHNEIDER

15   For the Defendant:       MR. CHARLES J. ARON
                              19 West Jackson Boulevard
16                            Suite 212
                              Chicago, Illinois  60604
17                            (312) 986-8012

18   U.S. Probation:          Mr. Torrance Wilkins

19   Also Present:            Mrs. Johnson, defendant's wife,
                              and Ms. Woods, defendant's
20                            daughter

21

22

23             COLLEEN M. CONWAY, CSR, CRR
                    Official Court Reporter
24        219 South Dearborn Street, Room 2524-A
                  Chicago, Illinois  60604
25                    (312) 435-5594
            colleen_conway@ilnd.uscourts.gov
```

EXHIBIT
1

2

1          (Proceedings in open court.)

2          THE CLERK:  04 CR 503, U.S.A. versus Willie

3   Johnson, for status.

4          MR. BHACHU:  Good morning, Your Honor.

5          Amar Bhachu on behalf of the United States.

6          MR. ARON:  Good morning, Your Honor.

7          MR. SCHNEIDER:  Good morning, Judge.

8          Matthew Schneider on behalf of the United States.

9          MR. WILKINS:  Good morning, Your Honor.

10          Torrance Wilkins, U.S. Probation.

11      (Defendant in.)

12          MR. ARON:  Good morning, Your Honor.

13          Charles Aron, A-r-o-n, on behalf of Willie Johnson.

14          Mr. Johnson is approaching the bench.

15          THE COURT:  Good morning.

16          Good morning, Mr. Johnson.

17          THE DEFENDANT:  Good morning, sir.

18          THE COURT:  What is the status?

19          MR. BHACHU:  Judge, the last time we were here, we

20   had talked to Your Honor about us potentially resolving this

21   case consensually between the parties.

22          I believe we do have a consensual resolution of

23   this case, and the resolution is as follows, Judge.

24          The government will be dismissing with prejudice

25   the indictment in case 04 CR 503.

1          And my understanding is that the defendant will be

2     admitting to a violation of supervised release in case 90 CR

3     950, and the parties will then argue for the appropriate term

4     with respect to the violation of supervised release.

5          THE COURT:  All right.

6          MR. BHACHU:  So in light of that, Judge -- I'm

7     sorry.

8          THE COURT:  All right.  Let me just speak with my

9     clerk for a moment.

10         (Court conferring with his clerk.)

11         THE COURT:  All right.  Is the defendant in

12    agreement with regard to criminal case number 04 CR 503 with

13    the government's motion?

14         MR. ARON:  With the indictment being dismissed with

15    prejudice, we have no objection.

16         THE COURT:  All right.  The indictment in that case

17    will be dismissed with prejudice.

18         And by that, the government is agreeing that double

19    jeopardy would attach and Mr. Johnson cannot be prosecuted

20    for that violation in the future?

21         MR. BHACHU:  That's correct, Judge.

22         THE COURT:  Okay.  All right.  Now, with regard to

23    the violation of supervised release, in the case that I have

24    been serving as the presiding judge on since its inception,

25    90 CR 950, there are certain violations of supervised release

**4**

1    that have been stated in the special report.

2            What is the defendant's position with regard to

3    those violations?

4            MR. ARON:  Judge, in that the burden of proof in

5    the violation of supervised release is by a preponderance of

6    the evidence as well as certain Fourth Amendment protections

7    don't necessarily apply, the defendant, Willie Johnson, will

8    be entering admission to violation number 1 in that there was

9    a gun found in his home, and he will be guilty based on

10   constructive possession.

11           THE COURT:  All right.  Mr. Johnson, is that your

12   position, that you did commit the violation number 1 set

13   forth in the supervised release special report --

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  -- in that you did have constructive

16   possession of a firearm in violation of your supervised

17   release?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  All right.  Having obtained admission

20   from the defendant, I find that Mr. Johnson is in violation

21   of his supervised release, and his supervised release is

22   revoked.

23           At this point, we then turn to the next phase,

24   which is to determine the appropriate sentence upon the

25   revocation of Mr. Johnson's supervised release.

5

1         MR. ARON:  Judge, we would be willing to waive a

2    Presentence Report in this case.

3         THE COURT:  All right.  Does the government desire

4    a Presentence Report?

5         MR. BHACHU:  No, Judge.

6         THE COURT:  All right.  I believe that a further

7    Presentence Report would not assist the Court, and so a

8    Presentence Report will be waived by everyone.

9         Mr. Wilkins, you don't have to do any further work

10   with regard to preparing a further Presentence Report.

11        MR. WILKINS:  I appreciate that.

12        THE COURT:  Now I will turn to the sentencing

13   phase, first hear from defense counsel, then from the

14   government, and then from Mr. Johnson himself.

15        MR. ARON:  Judge, if I might, may Mr. Johnson

16   proceed first?

17        THE COURT:  I am -- sure.

18        MR. ARON:  Also, Your Honor, so that you know, Mr.

19   Johnson's wife, daughter, sister, and granddaughter are all

20   present in court today.

21        THE COURT:  All right.  Before you speak, Mr.

22   Johnson, and I do appreciate your stepping over to the

23   podium, I need to confer with my clerk.

24        (Court conferring with his clerk and law clerk.)

25        THE COURT:  All right.  Mr. Johnson, my standard

6

1   procedure is to do what I had just said, which is to first

2   hear from defense counsel, then from the government, and I

3   always give the defendant the last word.

4           Your attorney has requested that you be allowed to

5   speak with me first.  I am going to allow that, but I am also

6   going to allow you the last word, too.  So if the lawyers say

7   anything further that you want to comment on after they make

8   their remarks, you will have that opportunity as well.

9           You may proceed with your remarks at this time.

10          THE DEFENDANT:  To the Honorable Judge Holderman,

11   first let me start by -- let me start by saying "thank you"

12   for helping me to find myself.  What I mean is I was in your

13   courtroom 15 years ago, and at the time -- and at that time,

14   I was a confused drug user who didn't care about myself,

15   didn't care about life, how life turned out in the end.

16          You let me read something in your courtroom, and

17   after that, I was sentenced to 15 years.  It wasn't what I

18   wanted, but it was just what I needed, for sure, to find

19   myself and get myself -- and to get life in some kind of

20   order.

21          I went down not knowing what the outcome was going

22   to be, when I was going to be -- what I was going to be --

23   what it was going to be like all the other time -- what was

24   it going to be like all the other times I went -- I went or

25   was it going -- or was there going to be a change and stop

1  just going in and out, in and out the front door and out the

2  back door with nothing in between.

3          I think not, because I know something, because I

4  know, because I know nothing -- if I know nothing else, I

5  know I wanted to change and not bring that same person back

6  to the free world, free world that I left.

7          It took about five years to get it together and

8  find some direction about what it was I wanted to do with my

9  life.  Seeing how I caused pain and hurt to other people,

10  other people lives while I was in my addiction, it was time,

11  it was time for me to try to give something back, so I went

12  to the Gateway Drug Treatment Program, not knowing what the

13  outcome was going to be, but seeing how I had never been in

14  treatment in all my years of using.

15          But after being there for two-and-a-half,

16  two-and-a-half months, I knew I was where I needed to be.  I

17  had found my calling.

18          They have a saying in the program:  You have to get

19  in where you fit in.  I started by helping younger guys in

20  the program, by telling them about my life and how it could

21  be for them if something didn't change in their lives.

22          I never thought I could feel so good, feel so good

23  to reach out to someone and help someone else, to be able to

24  watch young men who didn't understand themselves and what

25  they were doing with their -- what they were doing to their

1    loved ones by coming in and out of the system and not knowing

2    and understanding why.

3            That's when I found out what it was that I wanted

4    to do, so I started asking questions about what it would take

5    me for me to be a counselor.  I knew I would have to go back

6    to school and get a GED, get a GED, and I did.  I even went

7    back, I even went back to high school and got a high school

8    diploma.

9            I also enrolled in college and took some college

10   courses for counseling in hopes that I might find a job in

11   counseling once I got out.

12           I was in contact with some people on the outside

13   who told me they would try to help me once I was out, and in

14   about a month after being out, they helped me land a job

15   counseling.  I have grown to become a job counselor,

16   something I have grown to love.

17           At the time of my arrest, I was in -- at the time

18   of my arrest, I was enrolled at Malcolm X studying for an

19   Associate's degree as well as my certification for

20   counseling.

21           All I'm asking is that you give me a chance to go

22   back to that, to that -- to go back to that, what makes --

23   all I'm asking is for you to give me a chance to go back to

24   that, if you made it possible to me.  I promise you, you

25   won't be sorry.  Give me a chance.

1          THE COURT:  Mr. Johnson, when I sentenced you in

2   1991, I sentenced you well above the sentencing guideline

3   range.  The sentencing guideline range at that time -- at

4   that time, it was actually mandatory, and I departed from

5   that range.  The guideline range was 27 to 33 months.

6          The reason I had to sentence you to 15 years was

7   there was this minimum mandatory sentence of 15 years.  And

8   so I did impose a sentence of 15 years, and I told you at the

9   time that there will come a time when you will have completed

10  that sentence and you will be placed on supervised release

11  for a term of five years.

12          That time did come, and you were placed on

13  supervised release for five years, and I put in certain

14  conditions, one of which was do not possess a firearm.

15          All right.  I am going to now hear from government

16  counsel and then from defense counsel and then anything

17  further that Mr. Johnson desires to say.

18          MR. BHACHU:  Your Honor, picking up where you left

19  off with respect to the last time Mr. Johnson was before you,

20  I had an opportunity to just take a look at the transcript of

21  the proceedings that day.  It was back in 1990.  You were --

22  1991.  You were a seasoned judge then, and I was still in

23  college.

24          But what was interesting, Judge, from looking at

25  that was that Mr. Johnson gave a similar presentation as he

1    has done today.  He told you that his whole life had been

2    spent doing all the wrong things for the wrong reasons, and

3    he said that he was sorry for what he did.  And if he had a

4    chance to do it all over again, it would be different.  "So

5    all I can do now is the time I'm about to get and show myself

6    and the rest of society that it's never too late for change."

7            Well, Judge, he gets out, and again, you know, he

8    violates the terms of his supervised release.  There's a gun

9    in the house.

10           THE COURT:  Yes.  When was it that -- what was the

11   date of Mr. Johnson's --

12           MR. BHACHU:  Judge, that's July 19th, 1991.  I can

13   tender to --

14           THE COURT:  Well, that was the date of the

15   sentencing.  What was the date of Mr. Johnson's release?

16           What was your out date, Mr. Johnson?

17           THE DEFENDANT:  October the 2nd, 2002.

18           THE COURT:  October 7th?

19           THE DEFENDANT:  2nd.

20           THE COURT:  2nd?  All right.

21           MR. WILKINS:  Excuse me.

22           THE DEFENDANT:  In September.

23           MR. WILKINS:  Do you mean out on supervision?

24           THE COURT:  No.  When was he released from custody

25   such that he was placed on supervision?

1    MR. WILKINS:  Right.  That day was March 4th, 2003.

2    THE COURT:  March 4th, 2003?

3    MR. WILKINS:  Yes.

4    THE COURT:  All right.  And when was Mr. Johnson

5    arrested and detained in connection with the --

6    MR. WILKINS:  The violation?

7    THE COURT:  -- criminal case?  Well, the violation

8    or the criminal case that --

9    MR. WILKINS:  He was arrested on November the 15th,

10   2003.

11   THE COURT:  All right.  So he has at this point

12   served three and a --

13   MR. ARON:  Thirty-six-and-a-half months.

14   THE COURT:  All right.  Thirty-six-and-a-half

15   months.  Okay.

16   MR. BHACHU:  Yes, Judge.

17   THE COURT:  Go ahead.  Thank you.

18   MR. BHACHU:  Judge, the other thing I'd note from

19   the sentencing that took place in 1991 is after you heard the

20   presentation of counsel and the defendant's presentation, you

21   asked that his sentence of 15 years be served consecutive to

22   the sentence that was going to be imposed subsequently in the

23   Circuit Court of Cook County, which had not been imposed.

24   My understanding, having looked at the records, is

25   that that never happened.  I believe -- I'm not sure on this,

1    but I think he also got a similar sentence in terms of

2    duration in Cook County, but it was run concurrent to the

3    sentence that was imposed here.

4          I talked to my colleague, Mr. Schneider, and he

5    seems to recall there might have been an additional

6    proceeding subsequent to that -- I'm not quite familiar if

7    there was -- to perhaps adjust Your Honor's recommendation.

8          But I think, for what it's worth, it certainly

9    demonstrates, Judge, that you felt that a 15-year sentence

10   was appropriate --

11         THE COURT:  Right.

12         MR. BHACHU:  -- and that was because the defendant

13   had a massive, massive criminal history, over 40 arrests,

14   multiple convictions for robbery, theft, armed robbery

15   stretching back to 1967.

16         His criminal history category at the time you

17   sentenced him in 1991 was category VI.

18         By virtue of the fact that he's been in prison for

19   so long in relation to this case, the 90 CR 950 case, a lot

20   of that criminal history no longer counts in terms of

21   determining what his criminal history category is.

22         The point, though, is that, Judge, the defendant

23   has previously asked Your Honor for leniency so he can show

24   you that he's changed things, and this is the second time

25   that he's asked you for leniency.

1    The first time he was before you, you clearly

2  evinced, I think, a desire to sentence him to a term of

3  incarceration that was quite large.  In fact, you were not

4  willing to actually recommend that the sentence in the state

5  proceeding run concurrently to this sentence.

6    For those reasons, Judge, we'd ask that you impose

7  a sentence of five years, which is also the sentence that the

8  probation officer recommended when he presented this

9  supervised release violation to Your Honor, and thereafter

10  impose a term of supervision after incarceration on this

11  defendant as well.

12    THE COURT:  Mr. Wilkins, if I were to impose a

13  sentence of five years on this violation of supervised

14  release, what amount of supervised release could remain?

15    MR. WILKINS:  He could be sentenced up to five

16  years of supervised release.

17    THE COURT:  All right.  I will hear further

18  comments from government counsel.

19    MR. BHACHU:  Judge, I think that summarizes what I

20  have to say.

21    Again, the defendant has a lengthy criminal

22  history.  He's previously asked for Your Honor's leniency

23  insofar as he asked for it when he was sentenced initially

24  and indicated that he would change.

25    The fact that he violated the terms of his

1    supervised release shortly after he was released from custody

2    is suggestive of the fact that he is a recidivist.  He is

3    unable to actually conform his conduct to law.  He has a

4    massive criminal record and cannot be counted on to govern

5    his activities consistent with his obligations under law.

6           THE COURT:  All right.  I will hear from defense

7    counsel.

8           MR. ARON:  Your Honor, first, it's interesting that

9    the government pointed out Mr. Johnson's letter that he wrote

10   to the Court back in the '90s.

11          Mr. Johnson and I did not discuss what he wrote

12   today or what he brought before the Court, and he had no way

13   of knowing the government was going to talk about that

14   letter, yet he did.

15          THE COURT:  Well, the government may not have

16   actually known, government counsel may not have actually

17   known that he himself, government counsel, was going to talk

18   about the letter until Mr. Johnson did, so --

19          MR. ARON:  Yeah.

20          THE COURT:  But go ahead.

21          MR. ARON:  Mr. Johnson has had -- you know, we've

22   all changed in 15 years.  In this case, it's 18 years now

23   since that date.  He's been in custody for 37 months, just

24   about.

25          The government's dismissed the case, the underlying

1   case, with prejudice, and Mr. Johnson still, because he wants

2   to do the right thing, admitted to the Court that yes, a gun

3   was found in his house and he admitted to constructive

4   possession.

5          He's been adamant through the entire case that gun

6   was not his.  However, he does understand that because it was

7   in the premises that he resides in, it would be a violation

8   of his supervised release.

9          He has a family support system, as is present in

10  court today:  his wife, who they have been trying to

11  reconcile, and it's been difficult to do it with him in the

12  MCC, but they have been communicating by phone and by her

13  visits at the MCC; his daughter, who lives in the same

14  building; his granddaughter; he has a sister.  He has a

15  support system.

16         At the time that he was arrested, he had been

17  enrolled in the program where he was trying to become a

18  social worker, and it would be the type of person with his

19  background that if he does succeed in getting that social

20  work degree or the necessary papers, he would be the kind of

21  people that could -- person that could relate to the youths

22  on the street and possibly talk them out of being in the

23  position where they're going to be coming before you or some

24  other judge in this building.

25         I believe that the 36-and-a-half months that Mr.

1  Johnson has spent in custody in this case, awaiting trial,

2  awaiting motions more than is sufficient to repay his debt,

3  and I would ask the Court to give him time served.

4          As to further supervised release, I don't believe

5  that's necessary.  I think that Mr. Johnson knows that his

6  next arrest is going to be his last arrest; that if, in fact,

7  he is convicted of any crime, the likelihood of him ever

8  getting out of prison standing up will probably be slim and

9  none.

10          I think the resources of the Probation Department

11  could be better spent somewhere else, and I would ask the

12  Court to sentence Mr. Johnson to a period of time served,

13  actually having been served, and let him get on with his

14  life.

15          THE COURT:  All right.  Mr. Johnson, is there

16  anything further you want to say in connection with this?

17          THE DEFENDANT:  No, sir, Your Honor.

18          THE COURT:  I have a couple of questions.

19          The gun, what was it doing there?

20          THE DEFENDANT:  I don't know.

21          THE COURT:  What are you going to do to make sure

22  this never happens again?

23          THE DEFENDANT:  Ask questions.

24          MR. ARON:  Such as?

25          THE DEFENDANT:  I mean, my family knows now.  You

1    know what I'm saying?  I mean, at the time, they might not

2    have understood the detriments of having a gun in the

3    apartment.  They might not have understood even if the gun

4    didn't belong to me, by it being in the apartment, it, you

5    know, it connects me to the gun.  They might not have

6    understood that.

7           But I think today, they do understand that, you

8    know, you know, I, you know, I can't be around a gun, period,

9    in no kind of way.  In no form and no fashion, I cannot be

10   around a gun, and I think they understand that better today

11   than they did at that time.

12          THE COURT:  And what about the drugs?

13          THE DEFENDANT:  I don't know nothing about the

14   drugs.

15          THE COURT:  What are you doing to try to reconcile

16   with your family?

17          THE DEFENDANT:  Me and my wife trying to work some

18   things out.  Me and my wife is trying to get back together.

19   She comes to see me.  I talk to her on the phone.  I'm just

20   trying to get back together.

21          THE COURT:  How are you going to be a good husband,

22   a good provider, a good father?

23          THE DEFENDANT:  Well, I have some people, I have

24   some people on the outside that's willing to give me a

25   chance, to give me a job, and just give me a chance to be a

1   counselor, what I want to do.  I want to go back to school.

2           THE COURT:  Mr. Johnson, you and I are a lot older

3   men than we were in 1991 when I sentenced you on this 1990

4   crime.

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Since 1991, you have spent over 18

7   years in prison.

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Or close.  Not 18 years, but the

10  equivalent of a sentence of 18 years.  The actual amount of

11  time you spent in prison was --

12          THE DEFENDANT:  Sixteen-and-a-half years.

13          THE COURT:  -- sixteen years, yes.  What could you

14  have done with that 16 years of your life if you hadn't been

15  in prison?

16          THE DEFENDANT:  Well, at the state that I was in at

17  the time that I got -- at the time that I was sentenced, I

18  probably wouldn't have -- I probably wouldn't even been able

19  to stand here and talk to you today, because I probably

20  wouldn't -- you know, I probably would have been dead, at the

21  rate that I was going, and I feel like you prevented that,

22  you prevented that.  Because at the time, I didn't have any

23  direction.  I didn't know what it was that I wanted to do.  I

24  didn't know who I was.  I just didn't know.  And then being

25  incarcerated, it gave me a chance to find myself.

1          I found myself, and I found out what it was that I

2  want to do with the rest of my life, and I -- and that's what

3  I pursued when I was incarcerated.  I found out by going to

4  treatment that I enjoyed helping people.  I didn't know that.

5  I didn't know that I was going to like helping somebody

6  because that was never my position.  My position always was I

7  be -- if I befriended you, I befriended you for the wrong

8  reasons.  I befriended you because I thought I could -- down

9  the road somewhere, I might be able to use you, and that's

10  how I was.

11          But in going through a drug treatment program, it

12  just opened my eyes to a lot of other things.  It opened my

13  eyes to life, that life don't have to begin and end with me

14  getting high.  And I just wanted to change my life, and

15  that's what I did.

16          THE COURT:  Have you used any illegal drugs?

17          THE DEFENDANT:  Oh, no.  See, I -- it's one

18  thing -- but they tell you in the program never say never,

19  but it's one thing that I can say.  I don't never use again

20  in my life, 'cause the things that go along with using, I no

21  longer desire it, I don't.

22          THE COURT:  Does your family know you are telling

23  the truth here?

24          THE DEFENDANT:  They should.  Yeah, they -- yeah,

25  you know, they know that I, you know, that I don't use, and

**20**

1    I'm not going to use.

2             THE COURT:  Could I ask --

3             MR. ARON:  Judge, if you want to inquire --

4             THE COURT:  -- Mrs. Johnson --

5             MR. ARON:  -- of any of the family members, I have

6    not prepped them, and --

7             THE COURT:  I know, I understand.

8             MR. ARON:  -- as far as I'm concerned --

9             THE COURT:  I am going to ask Mrs. Johnson to step

10   forward and also her daughter, too.

11            Good morning, Mrs. Johnson.

12            MRS. JOHNSON:  Good morning.

13            THE COURT:  I saw you sitting in the public area

14   there.  Could you state your name for the record for us.

15            MRS. JOHNSON:  Justine Johnson.

16            THE COURT:  And how do you spell your first name?

17            MRS. JOHNSON:  J-u-s-t-i-n-e.

18            THE COURT:  And your daughter is with you?

19            MRS. JOHNSON:  Yes.

20            THE COURT:  And let me ask you to state your name.

21            MS. WOODS:  Ernestnae Woods.

22            THE COURT:  Mrs. Johnson, you just heard Mr.

23   Johnson.

24            MRS. JOHNSON:  Yes.

25            THE COURT:  Is he telling me the truth?

1    MRS. JOHNSON:  Yes.  Could I say something?

2    THE COURT:  You certainly may.

3    MRS. JOHNSON:  We've been married for 27 years.  My

4    husband have a good heart, he's a good person.  If I didn't

5    think he was no good, I wouldn't have waited all these years.

6    When he went to penitentiary them 18 years, I

7    waited, because I know that he's a good man, he's a good

8    husband, he's a good father.  Regardless of what is happening

9    and everything, I know in my heart, in his heart that he's a

10    good man, and I believe in him.  That's the most important

11    thing to me, that I believe in my husband.

12    THE COURT:  Ms. Woods, is there anything you want

13    to say or add?  You don't have to.  Since I had you come up

14    to the podium, I didn't want you to walk away feeling

15    disappointed if you wanted to say something.

16    MS. WOODS:  Something very brief.

17    For a lot of years, I was disappointed in my dad

18    because of the life he chose to live, but during all that, in

19    his addiction and being in the streets or whatever, like my

20    mom said, he was a good provider and a great dad, but his way

21    of thinking and the way he was doing things, it just -- I

22    wasn't used to it.

23    And he used to always tell me, "Baby, it's going to

24    get better, it's going to be all right," whatever, but when

25    he tell me that, he always ended up in jail.

1        And just this last time when he did that 15 years

2    and he came home, I was so excited.  It's just overwhelming

3    that he was home 'cause I knew things were going to get

4    better for us.

5        I'm 38 years old, and just think 18 years of my

6    life, he wasn't there.

7        So me and him talked.  I don't go visit him as

8    much, because I don't like to see him there, but we do talk

9    on the phone periodically, and I try to hold back because I

10   don't want him to get too comfortable and think like when he

11   come home, everything going to be all bliss.  No, we have to

12   start over from scratch.

13       And listening to him today, make the accusations

14   and the statements that he made, I'm overwhelmed that he has

15   actually moved forward in his life, because for a long time,

16   I just thought he was just stuck in that mode.  And today he

17   just enlightened me on things far as his plans and what he

18   going to do, you know.

19       And I'm going to support him as much as I can.  I

20   feel like that's my role for him, being his daughter and he

21   being in the situation that he's in.  He's been gone for a

22   long time, so times has totally changed.  I live out in the

23   world, so I just basically know that he have to adjust to the

24   way of life for the millennium, 2006, and I'm willing to

25   support him in that.  That's it.

1    THE COURT:  Thank you.

2    MS. WOODS:  Okay.  I can walk away?

3    THE COURT:  I am sorry?

4    MS. WOODS:  I can leave now?

5    THE COURT:  You can walk away, yes.  You can walk

6    away.  You can both walk away.

7        Anything further from counsel?

8    MR. BHACHU:  No, Your Honor.

9    MR. ARON:  No, Your Honor.

10   THE COURT:  Mr. Johnson, as I said, I always let

11   the person I am about to sentence have the last word.

12       Is there anything you want to say?

13   THE DEFENDANT:  Not really, Your Honor.

14   THE COURT:  Mr. Johnson, you are a very fortunate

15   person.  There is no question, at least from my brief

16   encounter with your wife and your daughter, that they love

17   you very much and that they have loved you really through

18   thick and thin, and it's still there.

19       I think you ought to think about that every time

20   you ever have the inkling you want to go back with your old

21   friends, those other people you were involved with crime with

22   those folks.

23       To have a woman like your wife stand up here and

24   say, "I waited for him because he is a good man," you better

25   make good on that.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  When I sentenced you back in '91 and

3    you made those remarks that have been commented on here

4    today, I actually did not believe you.

5          I believe you today, and, therefore, Mr. Johnson,

6    your life of crime is over.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  I am going to make your life of paying

9    for your crime over unless you decide in your mind you are

10   going to commit another crime, and then some other judge

11   somewhere else is going to say, "Mr. Johnson, Judge Holderman

12   gave you that break, and you never saw the benefit of that,

13   so your life in society will be over," and you will be

14   incarcerated for an even longer time, probably, than you have

15   been thus far in your life.

16         Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Now, you have just spent 16 of some of

19   the best years of your life in prison, and you have to do

20   what you can for the remaining years of your life to make up

21   for that, for yourself and for the people who love you.

22         I am going to sentence you to time served on this

23   violation.  I am not going to impose any further supervised

24   release.

25         Your life of crime is over today.  You will be

1   released from the MCC.  Well, you will have to go back to the

2   MCC.  You will be released from the MCC.

3        I am decreeing your life of crime is over today,

4   but only you can make good on that decree.

5        Do you understand?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  That is your obligation for the rest of

8   your life, to be a law-abiding citizen.

9        Do you understand that?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  Live it, all right?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  All right.  That will be the sentence

14   of the Court.

15       MR. ARON:  Thank you, Your Honor.

16       MR. WILKINS:  Your Honor --

17       THE COURT:  Mr. Wilkins?

18       MR. WILKINS:  Yes.  I'm assuming violations numbers

19   2 and 3 are dismissed?

20       THE COURT:  Violations numbers 2 and 3 are

21   dismissed?

22       MR. BHACHU:  Yes, Judge.

23       THE COURT:  All right.

24       MR. ARON:  No objection.

25       THE COURT:  Thank you, Mr. Wilkins.

26

1          MR. BHACHU:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          Mrs. Johnson and Ms. Woods, thank you very much.

4          MRS. JOHNSON:  Thank you.

5          MS. WOODS:  Thank you, Judge.

6          THE COURT:  All right.  We will take a short

7  recess.

8       (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4

# C E R T I F I C A T E

5       I, Colleen M. Conway, do hereby certify that

6   the foregoing is a complete, true, and accurate transcript of

7   the proceedings had in the above-entitled case before the

8   Honorable JAMES F. HOLDERMAN, Chief Judge of said Court, at

9   Chicago, Illinois, on December 6, 2006.

10
11
12   _____          1/31/08
13       Official Court Reporter              Date
        United States District Court
        Northern District of Illinois
14          Eastern Division
15
16
17
18
19
20
21
22
23
24
25

CHICAGO POLICE
**ARREST REPORT**
CPD-11.420 (REV. 3/02)

| 1. NAME (LAST - FIRST - MIDDLE) | | 2. SEX | 3. RACE |
|---|---|---|---|
| JOHNSON, WILLIE | | M | 35 |

| 5. C.R. NO. | 7. ALIAS OR NICKNAME | 8. DIST./RES. | 9. HEIGHT | 10. WEIGHT | 11. HAIR | 12. HAIR STYLE |
|---|---|---|---|---|---|---|
| 156 46228 | BO BO | 010 | 509 | 209 | BLK | SHORT B |

| 15. I.R. NO. | 16. RESIDENCE ADDRESS | APT. NO./FLOOR | 17. DISTING. MARKS, SCARS, DISABILITIES, ETC. | 18. SOCIAL SECURITY NO. |
|---|---|---|---|---|
| 96539 / 1607248 | 1806 So. HARDING | BASEMENT | TAT CHEST RGT ARM | 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 |

| 19. Y.D. NO. | 16A. CITY - STATE | ZIP CODE | HOME TELEPHONE | 20. STATE/PLACE OF BIRTH | 21. DRIVERS LICENSE NO. |
|---|---|---|---|---|---|
| | CHICAGO IL | 60623 | (773) 277-8129 | IL | J525-8804-8368 |

| 22. RD NO. | 23. OCCUPATION | 24. BUSINESS NAME - ADDRESS | CITY - STATE  ZIP CODE | 25. BUSINESS TELEPHONE |
|---|---|---|---|---|
| HJ-668241 | UNK | | | |

| 25. ADDRESS OF ARREST | 26. NO. ARRESTED | 27. LOCATION CODE FOR NATURE OF PREMISES | 28. BEAT OF ARREST | 29. DATE OF ARREST | | | TIME | 30. ARRESTEE TRANSPORTED TO UNIT | BY BEAT | TIME |
|---|---|---|---|---|---|---|---|---|---|---|
| 1806 So. HARDING | 1 | 330 | 1014 | DAY 15 | MONTH NOV | YEAR 03 | 0825 | 002 | 6177A | 0830 |

| 31. RESISTED ARREST | 32. WEAPON | | | | 33. PROPERTY INVENTORY NO(S). | 34. FOR NARCOTIC ARREST | APPROX. WT./ EST. STREET VALUE |
|---|---|---|---|---|---|---|---|
| YES  NO | PISTOL - REVOLVER | RIFLE SHOT- GUN | KNIFE | OTHER (SPECIFY) | 10210371,83,85 10210374,77,81 | □ SUSPECT CANNABIS ☑ SUSPECT CONTROLLED SUBSTANCE | NO. PILLS |

6. OGRAMS    672.00

| 35. VEHICLE ARRESTEE | YEAR | MAKE | MODEL | BODY STYLE | COLOR | STATE LICENSE NO. OR V.I.N. | DISPOSITION OF VEHICLE |
|---|---|---|---|---|---|---|---|
| OF ARRESTEE | | DNA | | | | | |

| 36. PERSON IN INVESTIGATIVE UNIT NOTIFIED | UNIT NOTIFIED | TIME | 37. DOES ARRESTEE HAVE UNATTENDED DEPENDENT CHILDREN AT HOME □ YES  ■ NO | IF YES - NAME OF Y.D MEMBER NOTIFIED-TIME | 38. NAME OF A.S.A./FEL. REV. | CHARGES APPROVED ☑ YES □ NO | TIME |
|---|---|---|---|---|---|---|---|
| | | | | | Moran | | 0943 |

| 39. VICTIM-COMPLAINANT | NAME | | | | SEX | RACE | AGE |
|---|---|---|---|---|---|---|---|
| | P.O. ROBERT GARZA  #7871 | | | | | | |

**FILED**

VICTIM INJURED   IF YES - DESCRIBE INJURIES
□ YES  ■ NO

VICTIM HOSPITALIZED
□ YES  ■ NO
□ TREATED & RELEASED

| 40. REFERENCES (CH. - PAR.) | 41. OFFENSES | 42. DISPOSITIONS | | 40. REFERENCES (CH. - PAR.) | 41. OFFENSES | 42. DISPOSITIONS |
|---|---|---|---|---|---|---|
| 7201LCS5/24-1.1(a) | UUW FELON | | 5 | | | |
| 7201LCS570/402 | P.C.S. | | 6 | | | |
| | | | 7 | | | |
| | | | 8 | | | |

NOV 1 8 2003

**DOROTHY BROWN
CLERK OF CIRCUIT COURT**

| 43. NARRATIVE | (The facts to support probable cause to arrest AND to substantiate the charges include, but are not limited to, the following): | EVENT NO. |
|---|---|---|
| | THIS IS A FOLLOW UP ARREST MADE BY THE P.S.E. GUN TASK FORCE. | 17833 |

HISTORY: ABOVE PLACED IN CUSTODY ON TODAY'S DATE IN THAT ON 02 OCT 03 R/Os EXCUTED A
SEARCH WARRANT AT 1806 So. HARDING WITH THE TARGET BEING WILLIE JOHNSON IR#96539. R/Os
RECOVERED A 38 SPECIAL REVOLVER LOADED WITH 5 LIVE ROUNDS AND AN ADDITIONAL 5 LIVE
ROUNDS INSIDE A GUN HOLSTER. ALSO RECOVERED WERE (1) PLASTIC BAG CONTAINING SUSPECT CRACK
COCAINE AND (1) PLASTIC BAG CONTAINING SUSPECT COCAINE, PROOF OF RESIDENCY, AND $720.00 USC
SUSPECT NARCOTIC PROCEEDS. ABOVE READ MIRANDA PER PRE PRINTED CARD BY P.O. GARZA#7871 IN THE
002ND DISTRICT AT WHICH TIME HE RELATED THAT HE BOUGHT THE GUN FROM A GUY ON THE STREET
ON THE 1500 BLOCK OF So. KEDZIE. MIRANDA READ AT 0910 HRS.
THE ABOVE ARRESTED HAS PREVIOUSLY CONVICTED OF A FELONY UNDER THE LAW OF ILLINOIS UNDER
90CR057001 FOR ARMED ROBBERY. ABOVE ALSO RELATED THAT HE BOUGHT THE DRUGS
FROM THE WEST SIDE.

ALSO ARRESTING  HARRIS 9930  TEAM 6177,6178

HAS ID

I hereby declare and affirm, under penalty of perjury, that the facts stated herein are accurate to the best of my knowledge, information and/or belief.

| 44. ARRESTING/APPEARING OFFICER'S SIGNATURE | STAR NO. | UNIT | DEPUTY CHIEF'S SIGNATURE | STAR | EMPL. NO. |
|---|---|---|---|---|---|
| | #7871 | 007 | D Brown Phil | | |

| 45. FIRST ARRESTING/APPEARING OFFICER - PRINT NAME | BEAT NO. | FURLO. | D.O. GRP. | MISD./ORD. CRT. KEY | 45. SECOND ARRESTING OFFICER - PRINT NAME - STAR NO. | 46. VEHICLE ASSIGNED □ ONE ☑ TWO |
|---|---|---|---|---|---|---|
| GARZA, ROBERT | 6177B | DNA | S/M | J | MITCHELL, V 15580, HARRIS, T#9930 | □ P.O.  □ P.O.  ☑ OTHER |

| 47. INITIAL APPROVAL OF PROBABLE CAUSE - SIG. - STAR | 48. RESULTS OF FINGERPR. CHECK WAIVED BY - SIG. - STAR | DATE | TIME | 49. APPROVAL OF CHARGES - SIG. - STAR | DATE | TIME |
|---|---|---|---|---|---|---|
| | | | | | | |

WATCH COMMANDER'S Notations

WAS THE OFFENDER RELEASED WITHOUT CHARGING?
□ NO  □ YES, * COMPLETE REVERSE.

| 50. ARREST. OFF. SEARCHED BY | STAR/EMPL. NO. | UNIT | 51. DATE RECEIVED - LOCKUP | TIME | 52. PERS. PROPERTY RECEIPT NO. | 53. TELEPHONE NO. CALLED | TIME |
|---|---|---|---|---|---|---|---|
| ALSTON | 8 | | 15 NOV 03 | 1050 | PB | 277 8129 | |

| 54. BOOKING OFFICER | STAR/EMPL. NO. | UNIT | 55. TIME FINGERPRINTED | 56. TIME PHOTOGRAPHED | 57. TIME FED | 58. PLACED IN CELL NO. |
|---|---|---|---|---|---|---|
| BRYANT | 13183 | 2 | 1140 | 1145 | | 3/3 |

**COURT INFORMATION**

| 59. ARR. OFF. DESIRED COURT DATE | BRANCH-CALL | 60. COURT SGT. TO HANDLE | 61. INITIAL COURT DATE | BRANCH-CALL | 62. FINAL CRT. DATE | BRANCH - CALL |
|---|---|---|---|---|---|---|
| 21 NOV 03 | 48-2 | □ YES ☑ NO | 01 JAN 13 | | | |

| 63. BONDED - DATE | TIME | 64. BOND RECEIPT NO. | 65. COURT DOCKET NO. | 66. FINAL JUDGE'S NAME |
|---|---|---|---|---|
| | | | | |

EXHIBIT
2

COURT COPY

3150438