```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

WILLIE JOHNSON,                     )
                                    )
              Plaintiff,            )
                                    )
    v.                              )    No.  07 C 6862
                                    )
ROBERT GARZA, et al.,               )
                                    )
              Defendants.           )
```

## MEMORANDUM OPINION AND ORDER

Willie Johnson ("Johnson") has filed a 42 U.S.C. §1983 ("Section 1983") action, together with a related state law claim, against the City of Chicago ("City") and eleven of its police officers ("Officers"): Robert Garza, Anthony Amato, Vernon Mitchell Jr., Thomas Harris, Thomas McDermott, Donna Strand, Daniel Ludwig, Enrique Pacheco Jr., Patrick Johnson, Bryant Garcia and A. Torres.[1] Johnson charges that he was deprived of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments[2] when Officers (1) searched the apartment where Johnson was staying, using a warrant that they obtained after having presented false information to a state magistrate judge, (2) arrested him without probable cause, (3) elicited

---

[1] According to Complaint ¶6, at all times relevant to this litigation Officers were employed by City's Police Department.

[2] As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provisions (which literally impose limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

incriminating statements without first administering the warnings mandated by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), (4) incarcerated him for more than three years pending disposition of state and federal indictments and (5) deprived him of fair criminal proceedings by failing to disclose exculpatory evidence and falsifying evidence and testimony.[3]  As indicated earlier, Johnson also asserts a state law claim:  one of malicious prosecution.

Defendants have moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Johnson's Complaint in its entirety for a failure to state a claim upon which relief can be granted. For the reasons discussed below, that motion is granted in part and denied in part.

### Motion To Dismiss Standards

In considering the sufficiency of a complaint under Rule

---

[3]  Despite the clear (and correct) teaching of such cases as <u>NAACP v. Am. Family Mut. Ins. Co.</u>, 978 F.2d 287 (7th Cir. 1992) and the equally clear message of Rule 10(b) as to the proper use of counts to set out separate "claims" (the federal concept) rather than splitting a single claim into different "causes of action" that rely on different theories of recovery (the Illinois state law practice), the pleading habits of most Illinois practitioners are too deeply ingrained to brook their conversion to the proper federal approach.  Just so here:  Fully a decade and a half after <u>NAACP</u>, Johnson's counsel has carved up a single federal claim into five counts, and the parties' memoranda have crossed swords in those terms.  This opinion has perforce been compelled to follow their lead--and to the extent that has also frequently forced an inaccurate use of the term "claim" here, that is the consequence of the limited vocabulary available when dealing with the issues in those terms.

12(b)(6), a court must accept all of the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in plaintiff's favor (see, e.g., McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006)). To survive Rule 12(b)(6) scrutiny, the complaint must (1) put defendants on "fair notice of what the...claim is and the grounds upon which it rests" (Rule 8(a)) and (2) plausibly suggest that plaintiff has a right to relief (EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007), citing and quoting Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955 (2007)).

### Factual Background[4]

Sometime in September 2003 Officers illegally entered and searched a basement apartment located at 1806 S. Harding in Chicago (¶8). Johnson did not live at that address but enjoyed the "rights of a guest" there (id.).[5] On October 2, 2003 Officers returned to the same apartment, armed with a search warrant they had obtained by relying on an informant of dubious

---

[4] What follows is a summary of Johnson's allegations, accepted as true for present purposes (Christensen v. County of Boone, 483 F.3d 454, 466 (7th Cir. 2007)(per curiam)). All citations to the Complaint will simply take the form "¶ --."

[5] Defendants have not challenged Johnson's standing to bring a Fourth Amendment claim. This Court thus will assume that Johnson qualifies as the type of guests that the Supreme Court and our Court of Appeals have held enjoy a "reasonable expectation of privacy in their host's homes" (Terry v. Martin, 120 F.3d 661, 663 (7th Cir. 1997), citing Minnesota v. Olson, 495 U.S. 91, 100 (1990)).

credibility and by "misrepresent[ing] and falsif[ying] information when presenting the warrant to a state magistrate for signature" (¶9).  During that second search Officers claimed they found, among other items, a controlled substance and a gun (¶10).

Then on November 15, 2003 Officers arrested Johnson and charged him with felonies related to the controlled substance and gun found at 1806 S. Harding (¶11).  During the arrest Johnson made what Officers "claimed" were incriminating statements before he was given his <u>Miranda</u> warnings (¶12).

As a result of Officers' actions, a state indictment was filed against Johnson in the Circuit Court of Cook County on or about December 8, 2003, after which a federal indictment against Johnson followed in the Northern District of Illinois on or about May 19, 2004 (¶13).  Johnson remained incarcerated for three years after the state's indictment, a direct result of Officers' decision to cover up relevant evidence and after they had lost "all trace[s] of information regarding their alleged informant" (¶¶14-16).  Johnson was released on December 6, 2006 only after Chief Judge James Holderman had (1) granted the United States' motion to dismiss the federal indictment against him[6] and (2) issued "various rulings and orders regarding irregularities and inconsistencies in police testimony and the prosecution proof

---

[6] Johnson's Complaint makes no mention of what became of the state indictment.

pertaining to constitutional issues" (¶15).[7]

## Timeliness of Unlawful Search and False Arrest Claims

According to defendants, Johnson's claims that Officers conducted an unlawful search of the 1806 S. Harding apartment and that they falsely arrested him are time-barred because they were not asserted within the two-year statute of limitations imposed by Illinois law (D. Mem. 3). It is unusual to dismiss a claim as time-barred under Rule 12(b)(6), because the statute of limitations is an affirmative defense that a complaint need not anticipate or overcome (Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)). Still, a plaintiff can "effectively plead[ ] herself out of court by alleging facts that are sufficient to establish the defense" (id.). On the other side of the coin, a complaint may present "any set of facts that if proven would establish a defense to the statute of limitations," thus making dismissal under Rule 12(b)(6) premature (Clark v. City of

---

[7] Defendants take issue with Johnson's characterization of Chief Judge Holderman's rulings, asserting that "[t]here was never a ruling or finding by the court that the detectives 'lied' about the informant" and that instead the government moved to dismiss its indictment "with prejudice in exchange for [Johnson's] guilty plea to violation of probation" (D. R. Mem. 2 n.1). To support their assertion, defendants have submitted a transcript of December 6, 2006 proceedings in Chief Judge Holderman's courtroom (D. R. Mem. Ex. 1). But because the current motion is advanced under Rule 12(b)(6) and not Rule 56, and because the ¶15 language last quoted in the text suggests the existence of "various" rulings and orders, it cannot now be assumed that the transcript contains the totality of the Holderman rulings. For the time being, then, this opinion will--as it must--take Johnson's allegations as true.

Braidwood, 318 F.3d 764, 767-68 (7th Cir. 2003)(emphasis in original).  In this instance the Complaint presents all the relevant facts, so this opinion can consider whether those two claims are indeed time-barred.

Wallace v. Kato, 127 S. Ct. 1091, 1094-95 (2007) greatly assists in that analysis, for it clarified the rules governing (1) the accrual date of a Section 1983 action (that is, when that "cause of action beg[ins] to run"), (2) the length of the concomitant statute of limitations and (3) the source of any applicable tolling rules.  Wallace held that although courts must look to the law of the state to identify the length of the statute of limitations and any relevant tolling rules, "the accrual date of a §1983 cause of action is a question of federal law that is not resolved by reference to state law" (id., emphasis in original).  Both the unreasonable search and the false arrest contentions will be evaluated in those terms.

**Unlawful Search Claim**

Johnson claims that his Fourth Amendment right to be protected from an unreasonable search was violated when Officers relied on an invalid warrant to enter and search the basement apartment at 1806 S. Harding on October 2, 2003.[8]  In that

---

[8]   In light of that contention, this opinion will not address the warrantless search of the same apartment that Johnson alleges had occurred sometime in September 2003.

6

respect, although the Fourth Amendment permits searches supported by probable cause and conducted pursuant to warrants (see, e.g., United States v. Butler, 71 F.3d 243, 248 (7th Cir. 1995)), that Amendment is violated when state officials "intentionally or recklessly submit[ ] false statements in an affidavit supporting a search warrant" (United States v. Hoffman, 519 F.3d 672, 675 (7th Cir. 2008), following Franks v. Del., 438 U.S. 154, 155-56 (1978)). That just-quoted language fits Johnson's allegations.

As to Johnson's unlawful search argument, Gonzalez v. Entress, 133 F.3d 551, 553 (7th Cir. 1998) holds that a Section 1983 action challenging such a search accrues at the time of the search--and under Illinois law Section 1983 actions are subject to a two-year statute of limitations (Jogi v. Voges, 480 F.3d 822, 836 (7th Cir. 2007)). That combination preliminarily suggests that Johnson's filing of this action on December 5, 2007-- more than two years after the October 2, 2003 search--came too late.

But that suggestion can be overridden if Johnson, pursuant to Wallace, can point either to some aspect of federal law that would alter the accrual date established in Gonzalez or to some provision of state law that would toll the two-year statute of limitations. Here the first of those alternatives is brought into play by the "discovery rule" of the federal common law, as explained in Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450

(7th Cir. 1990):

> Accrual is the date on which the statute of limitations begins to run.  It is not the date on which the wrong that injures the plaintiff occurs, but the date--often the same, but sometimes later--on which the plaintiff discovers that he has been injured.  The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress.[9]

Accord, such cases as Brademas v. Ind. Hous. Fin. Auth., 354 F.3d 681, 686 (7th Cir. 2004).

Under the federal discovery rule, Johnson's Section 1983 unlawful search claim did not accrue on October 2, 2003, but rather at the later time that he discovered the warrant used to execute that search was obtained through Officers' false statements.  According to ¶15 that did not take place until late 2006, when Chief Judge Holderman issued "various rulings and

---

[9] [Footnote by this Court]  Despite Cada's clear teaching, the parties have spoken in terms of the Illinois (not the federal) version of the discovery rule (J. Mem. 2-5; D. R. Mem. 2-4).  To be sure, the Illinois rule is somewhat like (but not at all identical to) the federal version, deferring accrual "until the plaintiff knows or should have known that she is injured and that such injury may have been wrongfully caused" (Golla v. Gen. Motors Corp., 167 Ill.2d 353, 363-64, 657 N.E.2d 894, 899 (1995), cited in Hollander, 457 F.3d at 692).  But given Wallace's instruction that state rules of tolling but not of accrual can be invoked to determine whether a Section 1983 action is time-barred (127 S. Ct. at 1094-95), and given the fact that Illinois' discovery rule is a rule of accrual and not tolling (Golla, 167 Ill.2d 363-64, 657 N.E.2d at 899-900), that state law version of the discovery rule does not apply here.

orders regarding irregularities and inconsistencies in police testimony and the prosecution proof" and ultimately granted the United States' motion to dismiss the indictment against Johnson (J. Mem. 4).[10]

Hence Johnson's unlawful search claim is not time-barred under Illinois's two-year statute of limitations, for he filed suit just a year after he assertedly discovered that he had been unconstitutionally injured. Indeed, that outcome is eminently sensible. If the rule applied differently, every person subjected to a search conducted pursuant to a warrant would have to file a protective Fourth Amendment lawsuit on the off chance that he or she might one day learn that the police had relied on false information to obtain it.

---

[10] Defendants argue that "[i]f in fact [Johnson] was innocent of any illegal activity as he alleges in his Complaint, then he would know at the time of the search--or when he first learned of the search--that it was not supported by probable cause" (D. R. Mem. 4). But that mischaracterizes both Johnson's Complaint and the nature of his constitutional injury. First, Johnson never claims innocence--instead he asserts that Chief Judge Holderman granted the United States' motion to dismiss the indictment against him. Such motions can be granted for reasons wholly unrelated to a defendant's innocence. Second, Johnson does not claim that the October 2, 2003 search was conducted without probable cause, but rather that it was conducted without a valid warrant. Basic Fourth Amendment jurisprudence teaches that a search must be supported by probable cause <u>and</u> a valid search warrant, assuming the police have not claimed an exception to the warrant requirement (<u>Katz v. United States</u>, 389 U.S. 347, 356-57 (1967)). Johnson does not claim an absence of probable cause to conduct a search. Instead he takes issue only with the validity of the warrant, which he asserts he had no reason to examine until late 2006.

**False Arrest Claim**

Johnson next urges that his Fourth Amendment rights were violated after Officers "falsely arrested" him on November 15, 2003 and charged him "with felonies pertaining to the alleged controlled substance and gun taken from the basement apartment" (¶11).  According to ¶21 that arrest "was without legal cause and unreasonable."[11]  Defendants have responded to that claim--just as they did to Johnson's unlawful search claim--by contending that it too should be dismissed as time-barred.  But here too Johnson's claim is saved by the federal discovery rule.

Wallace, 127 S. Ct. at 1100 holds that a Section 1983 action charging a false arrest accrues "at the time the claimant becomes detained pursuant to legal process."  In those terms Johnson's claim would have accrued not later than the date when he was first indicted (December 8, 2003), more than two years before he

---

[11]  To be more precise, Johnson's claim appears to be grounded on the premise that Officers' execution of the October 2, 2003 search using an invalid warrant caused his later arrest--predicated as it was on items found during that search-- to be invalid as well.  See United States v. Gillespie, 650 F.2d 127, 129 (7th Cir. 1981)(per curiam), stating that "[b]ecause the probable cause for [defendant's] arrest...resulted directly from the evidence seized during the illegal search, his detention was also illegal"; see also 3 Wayne R. LaFave et al., Criminal Procedure §9.4(c)(3d ed. 2008), explaining:

> If the police conduct an illegal search and as a consequence discover evidence which provides probable cause that a particular person has committed a crime, an arrest of that person based upon this information is unquestionably tainted, provided of course the arrestee had standing to object regarding the antecedent search.

filed suit here.  But Wallace's general rule does not end the inquiry.  Under the same federal discovery rule, Johnson's false arrest claim did not accrue until he learned of the unlawful nature of the search that yielded the probable cause for his arrest.  And again because that discovery did not take place until late 2006, Johnson advanced his false arrest claim well within Illinois' two-year statute of limitations.

It is true, as defendants assert, that the nonprecedential opinion in Dean v. Behrend, No. 07 C 4383, 2007 WL 4531796 (N.D. Ill. Dec. 19) found the federal discovery rule inapplicable to a Section 1983 false arrest claim, but the facts there differ markedly from the situation presented here.  In Dean police raided plaintiffs' home--while plaintiffs were present--with no warrant in hand, all the while stating that no warrant was needed (id. at *1).  During the search police seized a number of guns that provided probable cause for later arresting Terry Dean ("Dean")(id.).

Nearly three years after that search and arrest, Dean filed suit under Section 1983, arguing that his constitutional claim was not time-barred because "under the discovery rule, it was not the search and arrest...that created a basis for [the] potential lawsuit, but rather the later revelation that the police department had produced a false consent-to-search form" (id. at *3).  Judge Coar disagreed, writing (id., emphasis added):

11

> <u>The lack of any valid justification at the time of the search triggered this case</u>, not the fraudulent nature of formal justifications that might have been given within the police department. For this reason, Plaintiffs[] were aware or should have been aware of their potential claim as of the police actions on January 22, 2005.[12]

Accord, <u>Johnson v. Guevara</u>, No. 05 C 1042, 2007 WL 2608525, at *2 (N.D. Ill. Sept. 5).

Here, though, Johnson had no good faith basis for advancing a false arrest claim until he had some indication that the search warrant whose execution gave Officers probable cause for his arrest had been fraudulently obtained. And once again, because Johnson alleges that he did not learn of the warrant's alleged invalidity until late 2006, his injury did not accrue until then. So Johnson's false arrest claim is also not time-barred.

### Malicious Prosecution Claim

Johnson next contends that his constitutional rights were violated when Officers incarcerated him wrongfully for more than three years following his arrest. But that contention fails because such torts are not recognized in this Circuit in constitutional terms when an adequate state law remedy exists (<u>Newsome v. McCabe</u>, 256 F.3d 747, 751 (7th Cir. 2001)). That principle compels dismissal.

In that respect Johnson alleges that following his

---

[12] [Footnote by this Court] That was the date of the search (<u>id</u>. at *1).

November 15, 2003 arrest he was indicted on both state and federal charges and thereafter remained incarcerated until December 6, 2006 (¶¶11, 13-14, 16). Although Johnson uses "unconstitutional incarceration" to describe his injury, under <u>Wallace</u> his claim is actually a federal form of "malicious prosecution" (127 S. Ct. 1096). As <u>Wallace</u>, <u>id</u>. (internal citations omitted, second emphasis added) explains:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held <u>pursuant to such process</u>--when, for example, he is bound over by a magistrate or arraigned on charges. <u>Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution</u>, which remedies detention accompanied, not by absence of legal process, but by <u>wrongful institution</u> of legal process.

Despite providing that helpful definition, <u>Wallace</u> stopped short of deciding whether "such a claim is cognizable under §1983," a question that had been left similarly unresolved by the plurality opinion in <u>Albright v. Oliver</u>, 510 U.S. 266 (1994)(see <u>Wallace</u>, 127 S.Ct. at 1096 n.2). But our Court of Appeals has tackled that issue squarely in <u>Newsome</u>, 256 F.3d at 750-51, holding that the existence of such a tort claim under state law "<u>knocks</u> <u>out</u> any constitutional theory of malicious prosecution" (<u>id</u>. at 751, emphasis in original). Under <u>Newsome</u>, then, the existence of a state law remedy for malicious prosecution (as is true here) forecloses any federal constitutional remedy for the same tort. Thus Johnson's ability to sue Officers for malicious

13

prosecution under Illinois law dooms his asserted "unconstitutional incarceration" claim under Section 1983.

### Fifth Amendment Claim

Next Johnson asserts that his Fifth Amendment rights were violated when he made self-incriminating statements after his arrest without being given <u>Miranda</u> warnings. Defendants respond that any such claim must be dismissed because Johnson's Complaint never actually says he made any statements while in police custody (D. Mem. 5-6). Because this Court reads Johnson's Complaint the same way, it grants defendants' motion to dismiss his Fifth Amendment contention.

Here are Johnson's only allegations in purported support of that Fifth Amendment argument (¶¶12, 30 and 34, emphasis added):

> 12. Defendant police officers <u>claimed</u> that plaintiff made incriminating statements. Said statements were involuntarily made and made without proper <u>Miranda</u> warnings. Said statements were the fruit of the unconstitutional conduct of defendant officers.
>
>     *   *   *
>
> 30. The defendant officers intended to and did violate plaintiff's right against self-incrimination by their unconstitutional conduct. They <u>claimed</u> plaintiff made incriminating statements. <u>Said statements, if made,</u> were involuntarily made and made without proper and effective <u>Miranda</u> warnings. Said statements were the fruit of the unconstitutional conduct of defendant officers.
>
>     *   *   *
>
> 34. <u>Alleged incriminating statements</u> involuntarily obtained from plaintiff were used against plaintiff in his criminal proceedings, to his detriment.

Given the manner in which those statements are phrased--with liberal use of the words "claimed" and "alleged," as well as the purely hypothetical "if made"--Johnson's Complaint cannot fairly be read as alleging a violation of his Fifth Amendment rights. Instead it sounds as though Officers assertedly fabricated evidence when they "claimed" that Johnson made incriminating statements after his arrest, and they then compounded that misconduct when they relied on those "alleged incriminating statements" to initiate criminal proceedings against him. Because that contention is much like Johnson's claim of an injury actionable under the Fourteenth Amendment's Due Process Clause, this opinion will consider the quoted allegations in connection with that subject, discussed next.

### Due Process Claim

Finally on the federal front, Johnson asserts that Officers violated his rights under the Due Process Clause. Here are ¶¶39-42:

> 39. Defendant officers deprived plaintiff of fair criminal proceedings by engaging in multiple acts which include, but are not limited to, not disclosing known exculpatory evidence, submitting false charges as contained in the criminal complaints, submitting false police reports, testifying falsely, and otherwise acting to deny plaintiff fair legal proceedings.
>
> 40. Defendant officers further withheld evidence and concealed vital facts from the prosecution and the court in order to obtain a warrant and to prosecute plaintiff over the course of three years.
>
> 41. These acts directed toward plaintiff were

>intentional and material, and were in violation of plaintiff's right to due process.
>
>42. These acts resulted in a wrongful conviction and loss of liberty for almost three years.

Those allegations, when translated to federal constitutional terms, appear to equate to claims that (1) a failure by Officers to disclose exculpatory evidence violated Johnson's rights under the Due Process Clause pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and (2) Officers' falsification of evidence and fabrication of testimony violated Johnson's rights under the same constitutional provision.[13] Neither such claim withstands analysis.

First, Johnson's Brady-type claim fails because his case never went to trial. As Newsome, 256 F.3d at 752 put it, "Brady identifies a trial right," particularly because it mandates the disclosure only of evidence that "is material either to guilt or to punishment" (Brady, 373 U.S. at 87). Johnson's pleadings appears to reflect that the United States' motion to dismiss the indictment against him was granted, so that he never took part in a proceeding designed to determine his guilt.[14] Without such a

---

[13] That not only seems to be a fair characterization, but it is not at all at odds with the discussion in Johnson's memorandum in opposition to the current motion.

[14] To be sure, ¶42 recites that Johnson was wrongfully convicted. But that seems inconsistent with the rest of Johnson's Complaint, which (1) asserts that the federal indictment against him was dismissed upon a motion filed by the United States and (2) as already noted, never explains what

16

proceeding (or even a guilty plea, see McCann v. Mangialardi, 337 F.3d 782, 787 (7th Cir. 2003)), Johnson cannot claim a Brady violation.

Johnson's second claim--that Officers' falsification of evidence violated his due process rights--also fails in light of McCann. There the plaintiff, much like Johnson, charged in part that a defendant police officer "violated his right to procedural due process under the Fourteenth Amendment by: (1) 'purposefully creating false evidence for the purpose of procuring [his] criminal conviction and imprisonment'" (337 F.3d at 786, alteration in original). McCann, id. held that claim succumbed on the pleadings--first "because it [was] nothing more than a recast of his Fourth Amendment false arrest claim," and second because it was nothing more than a recast malicious prosecution claim (barred, as already explained, by Newsome).

In short, the plaintiff in McCann could not (id.):

> do an end run around the foregoing precedent by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.

Neither can Johnson. So his due process claim, based as it is on allegations that Officers fabricated and falsified evidence

---

became of the state's indictment against him (see n.5). This opinion therefore assumes that ¶42 misspoke in referring to a wrongful conviction, for the rest of the allegations suggest nothing of that sort.

17

against him, fails as a matter of law.

One final note is in order before closing the chapter on Johnson's alleged due process violations. In his response to defendants' motion to dismiss, Johnson appears to argue that the previously cited portion of his Complaint should also be read as charging that Officers violated his constitutional rights by denying him "adequate, effective, and meaningful" access to the courts by "conceal[ing] or obscur[ing] important facts about a crime" (J. Mem. 9).

It is unclear whether Johnson intends to claim something different from what has just been discussed. If so, Johnson offers only one clue to that intention: a citation to <u>Cefalu v. Village of Elk Grove</u>, 211 F.3d 416, 422-23 (7th Cir. 2000). But <u>Cefalu</u> does not aid Johnson--it simply upheld a district court's decision that, as a matter of law, plaintiffs could not prevail on a Section 1983 conspiracy claim where efforts to cover up police wrongdoing did not ultimately keep plaintiffs from seeking adequate legal redress (<u>id</u>. at 423, citing and adhering to <u>Vasquez v. Hernandez</u>, 60 F.2d 325, 329 (7th Cir. 1995)).

Here too Johnson was not prevented from filing his Section 1983 action through any type of conspiracy or cover-up by Officers. Although the fabrication of evidence and other alleged instances of police wrongdoing may have operated to delay Johnson's proverbial "day in court" because he could not file

this action until he learned of Officers' misconduct, the fact remains that he is court now. Hence to the extent that Johnson attempts to assert a Section 1983 conspiracy claim, that effort is also rejected.

### Supplemental Jurisdiction over State Law Claim

Finally Johnson has brought a claim against Officers for the Illinois tort of malicious prosecution.[15] Defendants have understandably urged that if this Court were to have dismissed all of Johnson's Section 1983 claims, his state law claim should also be dismissed--without prejudice, of course (D. Mem. 13-14, citing Vukadinovich v. Bd. of Sch. Trs., 978 F.2d 403, 415 (7th Cir. 1992)).

But with two of Johnson's federal constitutional attacks having survived, supplemental jurisdiction continues to exist over Johnson's state law malicious prosecution claim because it "form[s] part of the same case or controversy under Article III of the United States Constitution" (28 U.S.C. §1367(a)). That claim will not be dismissed.

### Conclusion

In sum, defendants' Rule 12(b)(6) motion is granted in part and denied in part. Johnson's contentions that Officers unlawfully searched the 1806 S. Harding apartment and falsely

---

[15] On that claim Johnson seeks to impose liability on City under the doctrine of respondeat superior (¶53).

arrested him are not time-barred and therefore survive, as does Johnson's state law claim of malicious prosecution.  All his other contentions are dismissed for failure to state a claim upon which relief can be granted.  Defendants are ordered to answer the surviving claims on or before July 25, 2008.  Further proceedings will be discussed at a status hearing at 9 a.m. August 1, 2008.

_____
Milton I. Shadur
Senior United States District Judge

Date:  July 11, 2008